UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| O'OUIDA C. YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  4:10CV824 TIA |
| | ) |
| ST. JOHN'S MERCY HEALTH SYSTEM | ) |
| d/b/a ST. JOHN'S MERCY MEDICAL | ) |
| CENTER, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Statement of Facts**

As part of its Motion for Summary Judgment, Defendant has attached a Statement of Uncontroverted Material Facts.  Plaintiff has failed to respond to the Defendant's motion, and the time for filing a response has expired.[1]  Under Local Rule 7-4.01, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."  Therefore, the Court sets forth the following facts as presented by the Defendant in this matter[2]:

---

[1] Defendant filed its Motion for Summary Judgment on June 30, 2011, and the Plaintiff filed two separate motions for extensions of time to file her response, which this Court granted. In Plaintiff's second motion, she requested an extension of time through September 14, 2011. Despite receiving additional time, Plaintiff failed to file an appropriate response.

[2] The undersigned adopts and incorporates Defendant's thorough and comprehensive Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment [Doc. #47] and, for purposes of this Memorandum and Order, sets forth an abbreviated version taken from Defendant's statement of facts.

Plaintiff is an African-American female.  She was 43 years old at the time she filed her Complaint.  Defendant is a non-profit corporation, operating St. John's Mercy Medical Center, a hospital in St. Louis County, Missouri ("St. John's").  Plaintiff was employed by St. John's as a registered nurse in th St. John's Perioperative Nurse Fellowship Program ("Fellowship Program") from June 9, 2008 until April 13, 2009, when her employment was terminated.  Mary Kelder and Christy Lanigan interviewed and hired Plaintiff for the Fellowship Program to become an operating room ("OR") nurse.  Plaintiff's goal was to join the OR float team, where she could work as either a "scrub tech" or a "circulator" for a variety of specialties.  A "scrub tech" is responsible for setting up surgical instruments, scrubbing into the surgery, and passing the instruments to the doctor during surgery.  A "circulator" checks in the patient, ensures that all documents are complete, and ensures the doctor and scrub tech have all necessities for the surgery.  A circulator must be a registered nurse.

Successful completion of the Fellowship Program required participants to demonstrate adequate proficiency in performing the scrub tech and circulator duties with limited supervision from or reliance on OR nurse instructors ("preceptors") so that doctors and other nurses would trust them in the OR.  Proficiency included knowledge of the instrumentation in critical OR procedures such as aseptic/sterile techniques, gowning and gloving, and passing instruments with adequate speed and skill.  Six other participants entered the program with the Plaintiff.  They were all caucasian with ages ranging from 23 to 39.

Ms. Lanigan, Nurse Educator, was responsible for the day-to-day oversight of the Fellowship Program, which included coordinating the participants' schedules with preceptors in various specialties and running post-conference sessions where the participants could share OR experiences and ask questions.  Plaintiff began the Fellowship Program shortly after graduating from nursing

school. She had no prior nursing experience. During orientation, Ms. Lanigan explained that the OR can be a tense environment, with surgeons sometimes yelling at the nurses. Plaintiff responded that she refused to be yelled at and would probably yell back. Ms. Lanigan explained that such behavior would be grounds for termination and suggested that the St. John's Employee Assistance Program ("EAP") could be helpful to learn positive and effective ways to learn the proper tools to use in the OR when things became heated. Ms. Lanigan made two additional references to EAP in the next few weeks.

On October 15, 2008, Plaintiff met with Corey Jones to complain about Ms. Lanigan's suggestion that Plaintiff contact EAP as well as to discuss additional training opportunities during post conferences. Plaintiff felt the EAP comments were racially discriminatory because educated African-American women are labeled "aggressive" or "crazy" for being assertive. Ms. Jones talked to Ms. Lanigan, who then apologized to Plaintiff and explained that she did not intend to be offensive but merely tried to help Plaintiff protect her job by suggesting ways to more appropriately lead with the OR environment. Ms. Lanigan also repeatedly suggested the EAP to Amy Bauer, a white participant with no prior nursing experience. Plaintiff was aware that Amy Bauer went to EAP and found it helpful.

While participating in the Fellowship Program, Plaintiff arrived late to her assigned OR and was out of the room during operations. Management received numerous comments regarding Plaintiff's tardiness and absenteeism, and in January 2009, management was aware that she was nearing the level of requiring counseling. According to Plaintiff's time sheets, she missed 9 days during her participation in the Fellowship Program and left work early between 15 minutes and 2 hours and 45 minutes on 25 different occasions. Further, Plaintiff was frequently late to post

3

conferences.

In October 2008, Plaintiff began receiving negative feedback from Dr. Craddock, a doctor in the training program. According to Dr. Craddock, Plaintiff had difficulty taking a blade knife off the handle; she took off her gloves before her gown, contaminating her hands; and she was slow, had trouble loading and passing a suture, had to look around when asked for an instrument; and failed to properly glove. Plaintiff admitted to her therapist, Gladys Smith, that she had problems in the Fellowship Program and did not feel she was progressing.

Also in October 2008, Plaintiff indicated to Ms. Lanigan that she needed more hands-on training. After discussing the issue with Ms. Kelder, they paired Plaintiff with Ms. Stokes, who had 30 years of scrub experience, and scheduled a day of training. However, Plaintiff complained during the additional training day that she felt an entire day was too much and that she felt singled out. Ms. Stokes later reported that she had a conversation with Plaintiff about her attitude, that Plaintiff did not take criticism well, and that Plaintiff believed she knew everything but her actions demonstrated otherwise.

In December 2008, Ms. Lanigan received complaints about Plaintiff's ability to maintain a sterile field and that, when the neuro team attempted to explain this to Plaintiff, she did not appear to be listening. Ms. Lanigan discussed the situation with Ms. Kelder, and they decided to review aseptic techniques with the group to avoid making Plaintiff feel singled out. Plaintiff also had problems putting catheters in patients, putting restraints on patients, and passing sutures. Dr. Francel, an OR doctor, no longer trusted Plaintiff with his patients.

The participants in the Fellowship Program must have their yellow workbooks with them each day to fill out on a daily or near-daily basis. However, Plaintiff was missing many entries in her

4

workbook.  Ms. Lanigan reminded all of the participants that they needed to complete the workbooks to successfully complete the Fellowship Program, but Plaintiff's yellow book was lost at that time. In fact, she did not make any entries from January 15 through March 9, 2009.  Review of Plaintiff's workbook indicated days without signatures, incomplete entries, and recurring negative feedback regarding poor performance.

In March 2009, Mary Kelder reviewed and investigated the issues related to Plaintiff's performance during the Fellowship Program.  Ms. Kelder decided to extend the first phase of the Fellowship Program for thirty days and put Plaintiff on a "work improvement plan."  Ms. Kelder based her decision on Plaintiff's workbook, which failed to demonstrate progress; concerns about Plaintiff's attitude; concerns that Plaintiff blamed her issues on others; concerns over the validity of the information in Plaintiff's workbook, as Plaintiff tried to later convince OR staff to belatedly complete her workbook.  No other participants had the same performance deficiencies, and Ms. Kelder believed the others were ready to move on.  To avoid singling out Plaintiff, Ms. Kelder gave the graduation certificates to the other participants' supervisors to give directly to each participant in lieu of the usual group ceremony.

During Plaintiff's extension which began March 6, 2009, she was assigned two of the most experienced OR nurses to precept Plaintiff.  The work improvement plan set forth concerns as well as expectations Plaintiff needed to meet in order to achieve successful completion after the 30-day extension.  The plan also recommended that Plaintiff get daily, constructive feedback from her mentors; and step up to the plate to show others what she knew, ask questions, or ask for help when needed.  Through these recommendations, management hoped to build Plaintiff's confidence in an effort to grow from experience based on sound basic principles.

Throughout the extension and work improvement plan, feedback from mentors included attitude problems; refusal to accept constructive feedback; desire to work independently instead of with preceptor observation; and a failure to work with all team members in a positive, professional manner.

On April 3, 2009, Ms. Kelder met with Plaintiff and Laurie Patch and updated the work improvement plan.  The plan included information that Plaintiff did not like Laurie checking on her; Plaintiff was still too slow; she had a negative attitude; and she did not know basic medication.  In addition, the daily entries in Plaintiff's workbook indicated many suggestions to work on, including attitude, speed, prep, sterility, basic principles, confidence, and priorities.  On that same day, Ms. Kelder indicated concerns over Plaintiff's attitude such that Plaintiff may not be the right fit.

On April 7, 2009, due to Plaintiff's poor performance and conduct during the 30-day extension, Ms. Kelder suspended Plaintiff pending a more thorough investigation.  On April 9, 2009, Ms. Kelder completed a final update on Plaintiff's work improvement plan, noting that 6 days in the workbook had no entries and that the documentation was inconsistent with verbal feedback.  The update also stated that Plaintiff continued to have problems with poor attitude, as well as problems with speed and skills.  Ms. Kelder believed that Plaintiff failed to meet the expectations necessary to successfully complete the Fellowship Program.

On April 13, 2009, Defendant supervisors and Human Resources personnel met with Plaintiff and gave her the opportunity to resign.  Plaintiff was terminated after she refused to resign. Defendant St. John's issued an employment counseling form setting forth the reasons for termination.

Plaintiff allegedly informed Defendant that its nurse educator, Christy Lanigan, failed to

6

provide Plaintiff with training, guidance, and assistance provided to other participants. Other participants had the same complaints about Ms. Lanigan and voiced these concerns to Ms. Kelder and their nurse mentor. However, other participants received additional training by finding unused ORs and practicing or by receiving training from their preceptors. Ms. Lanigan was removed from her position as Nurse Educator in March, 2009. While Plaintiff alleges that Ms. Lanigan made references to Plaintiff being slow due to her older age, Plaintiff's only complaint to management involved Ms. Lanigan's suggestion that Plaintiff seek help through the EAP, which Plaintiff believed to be discriminatory toward assertive black women. While Plaintiff discussed transferring to another area of nursing, she never expressly requested to discontinue the Fellowship Program or transfer to another nursing area.

Plaintiff began working for Davida in June or July of 2009 and has been employed as an acute dialysis nurse at Fresenius since September 28, 2009.

**Procedural History**

On May 5, 2010, Plaintiff filed a Complaint against Defendant St. John's Mercy Health System, asserting five Counts. In Count I, Plaintiff alleges that Defendant discriminated against her on the basis of race and in retaliation for her complaints of discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Complaint, ¶¶ 1-18) Count II asserts that Defendant treated Plaintiff in a discriminatory manner because of her race unlike white employees similarly situated and because of her complaints of discriminatory treatment in violation of 42 U.S.C. § 1981. (Complaint, ¶¶ 19-23) Plaintiff alleges in Count III that Defendant discriminated against her on the basis of her age, 43, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Complaint, ¶¶ 24-31) In Count IV, Plaintiff

7

contends that Defendant discriminated against her in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213 et seq. (Complaint, ¶¶ 32-35) Finally, Plaintiff alleges that Defendant breached the employment contract as stated in the Agreement with Nursing Fellowship Participant. (Complaint, ¶¶ 36-41)

On January 3, 2011, this Court granted Defendant's Motion to Dismiss Count V and also granted Defendant's Motion for Summary Judgment on Count IV.  On June 30, 2011, Defendant filed a Motion for Summary Judgment, alleging that Defendant is entitled to judgment as a matter of law on Plaintiff's remaining claims, Counts I, II, and III, because the "same decision-maker" defense applies to Plaintiff's claims, and Plaintiff cannot demonstrate a prima facie case of race or age discrimination.  Plaintiff did not file a response, despite additional time to do so.

**Standard for Ruling on Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.

8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

In the context of employment discrimination cases, the Eighth Circuit Court of Appeals has cautioned that courts should seldom grant summary judgment because such actions are inherently fact-based. Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998). Thus, "[s]ummary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Id.

## Discussion

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it unlawful for an employer to discriminate against an employee on the basis of race. 42 U.S.C. § 2000e-2(a)(1). Likewise, under the ADEA, it is unlawful for employers to discriminate against an employee on the basis of age, if that employee is over 40 years old. 29 U.S.C. §§ 623(a)(1), 631(a). 42 U.S.C.§1981 states that all persons in the jurisdiction of the United States have the same right "to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white

9

citizens . . ."

### **Racial Discrimination**

In the absence of direct evidence of discrimination, the burden-shifting framework of McDonnell Douglas applies to claims of race discrimination, which requires a plaintiff to demonstrate a prima facie case of discrimination. Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008). Courts apply the same analysis to claims of discrimination brought under Title VII and 42 U.S.C. § 1981. See Saulsberry v. St. Mary's Univ. of Minnesota, 318 F.3d 862, 866 (8th Cir. 2003) (citations omitted) (stating that the elements and analysis of Title VII and § 1981 claims are the same). To establish a prima facie case of discrimination on the basis of race, a plaintiff must show: "(1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently." Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (citation omitted). Once a plaintiff makes a prima facie case of racial discrimination, the burden shifts to the employer "to present evidence of a legitimate, nondiscriminatory reason for its adverse employment action." Bearden, 529 F.3d at 831. Where an employer articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. Id. at 831-32. Defendant argues that Plaintiff is unable to establish a prima facie case because she cannot prove that she was meeting the legitimate expectations of her employer or that similarly situated white employees were treated differently.

The undersigned finds that Plaintiff is unable to demonstrate a prima facie case of racial discrimination. Plaintiff, an African-American female, was a member of a protected group. Likewise, she suffered adverse employment actions when Defendant extended her participation in the

Fellowship Program by 30 days; placed her on a work improvement plan during that period; suspended her from the program; and finally terminated her participation in the program. However, with regard to meeting the legitimate expectations of her employer, Plaintiff is unable to demonstrate that she met her employer's expectations.

The standard for assessing performance "'is not that of the ideal employee, but rather what the employer could legitimately expect.'" Calder, 298 F.3d at 729 (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 920 (8th Cir. 1999)). However, the mere fact that an employee meets some expectations does not mean that she meets her employer's legitimate expectations where she does not meet other, significant requirements. Id.

Plaintiff does not contest the plethora of evidence presented by the Defendant regarding problems with her attitude, punctuality and attendance, and performance. For instance, Plaintiff refused to accept constructive criticism from mentors, and she complained when she received the additional training that she specifically requested. Plaintiff also failed to obtain the required feedback in her yellow book on many occasions. In addition, she arrived late to her assigned OR and left during operations. She missed 9 days during her Fellowship Program participation, and she left work early 25 times. A plaintiff who is habitually tardy fails to show that she was meeting her employer's legitimate expectations. Williams v. RIGHTChoice Managed Care, Inc., No. 4:07CV01419 ERW, 2008 WL 681695, at *3 (E.D. Mo. March 7, 2008). Most importantly, her performance in the OR was deficient, where speed and sterility, among other things, are of the utmost importance. Indeed, OR doctors complained about Plaintiff's performance and lost trust in her ability to work in the OR.

Despite these issues, Defendant worked with Plaintiff in order to help her succeed in the

11

Fellowship Program.  Defendant provided additional one-on-one training, as well as placed her on a 30-day improvement plan to work with two of the most experienced OR nurses.  Despite the extra help, Plaintiff continued to demonstrate poor performance and a poor attitude.  Plaintiff is therefore unable to demonstrate that she was qualified to participate in the Fellowship Program.  Thus, the undersigned finds that Plaintiff is unable to make a prima facie case of racial discrimination because she cannot demonstrate that she was meeting her employer's legitimate job expectations.

The undersigned additionally notes that fact that the same person hired and fired Plaintiff belies any inference that Defendant discriminated against Plaintiff on the basis of her race.  The Defendant correctly notes Eighth Circuit precedent stating, "[t]here is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time."  Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997).  As such, Defendant is entitled to judgment as a matter of law on Plaintiff's claims of racial discrimination under Title VII and § 1981.

### Retaliation

The burden shifting analysis of McDonnell Douglas also applies to retaliation claims.  Turner v. Gonzales, 421 F.3d 688, 695 (8th Cir. 2005) (citation omitted).  In order to demonstrate a prima facie case of retaliation, Plaintiff must show that she: "(1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action."  Takele v. Mayo Clinic, 576 F.3d 834, 839 (8th Cir. 2009) (citation omitted).  Protected activity includes filing grievances, incident reports, charges of discrimination, and lawsuits.  Sutherland v. Mo. Dept. of Corr., 580 F.3d 748, 752 (8th Cir. 2009).

Here, the Defendant maintains, and the Plaintiff does not dispute, that Plaintiff's complaints

do not rise to the level of protected activity. Plaintiff complained to Corey Jones about Ms. Lanigan on only one occasion. The complaint merely stated (1) that Plaintiff was offended that Ms. Lanigan suggested that Plaintiff could benefit from the Employee Assistance Program and (2) that Plaintiff wanted more productive post conferences. The complaint regarding post conferences had nothing to do with race discrimination and was not protected conduct under Title VII. See Helton v. Southland Racing Corp., 600 F.3d 954, 961 (8th Cir. 2010) (finding that any action taken in response to a conversation without mention of race discrimination was not actionable under Title VII).

With regard to the EAP comments, Plaintiff mentioned to management that she felt the suggestion was derogatory towards here because she was African-American. However, even if this was protected activity complaining about discriminatory conduct, Plaintiff is unable to demonstrate a causal connection between her complaint and her termination from the program. First, all of the participants had complaints regarding Ms. Lanigan's performance, and Defendant subsequently removed Ms. Lanigan from her position prior to Plaintiff's termination. Further, the time between lodging the complaint and the adverse action belies any inference of a causal connection. Plaintiff complained in October 2008. She was placed on the performance improvement plan in March 2009 and ultimately discharged from the program in April 2009. While a causal connection between an employer's knowledge of protected activity and termination may be inferred from the timing of the two events, they must be very close to establish causation. Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1087-88 (8th Cir. 2010) (citations omitted) (abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011)). A five month interval between Plaintiff's complaint and her termination is "tenuous at best" and does not establish causation in this case. See Id. at 1088 (holding that intervals of one month did not establish causation in plaintiff's claim of retaliation).

13

Because Plaintiff is unable to demonstrate a prima facie case of retaliation, summary judgment in favor of Defendant on Plaintiff's retaliation claim is warranted.

### Age Discrimination

Finally, Plaintiff asserts in Count III that Defendant discriminated against her on the basis of age, which was 41 when she was hired and 42 at the time of her termination. Where evidence of age discrimination is circumstantial, the McDonnell Douglas burden-shifting analysis applies. Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir. 2008) (citation omitted). To prevail on an age discrimination case, the Plaintiff has the burden of establishing a prima facie case of discrimination. Id. (citation omitted). A prima facie case of age discrimination under the ADEA requires Plaintiff to show: "(1) she was at least forty years old, (2) she was meeting her employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly-situated employees outside the class were treated more favorably." Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007).

Defendant does not dispute that Plaintiff was over 40 years old or that she suffered an adverse employment action. However, Defendant asserts that Plaintiff cannot show that she was performing her job at a level that met Defendant's legitimate expectations, nor is she able to demonstrate that similarly situated employees outside of the protected class were treated more favorably.

The undersigned finds that Plaintiff is unable to establish a prima facie case of age discrimination. As previously stated above, Plaintiff is unable to show that she was meeting her employer's legitimate expectations. Her attitude problems, excessive absences and tardiness, and deficient performance rendered her unable to perform her job at a level that met Defendant's legitimate expectations. Additionally, Plaintiff was a member of the protected age group when she

was hired, then fired 10 months later, by the same person. This buttresses Defendant's argument that Plaintiff is unable to demonstrate a prima facie case that Defendant discriminated against her on the basis of age. See Lowe v. J.B. Hunt Transport, Inc. 963 F.2d 173, 174-75 (8th Cir. 1992) ("It is simply incredible, in light of weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."). Thus, Defendant is entitled to judgment as a matter of law on Plaintiff's claim of discrimination based on age. Cohen v. Renaissance Grand Hotel, No. 4:06CV00401-ERW, 2007 WL 2080385, at *5 (E.D. Mo. July 16, 2007).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. #46] is **GRANTED.** A separate Judgment shall accompany this Memorandum and Order.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  9th  day of November, 2011.